Willard McPHAIL, Petitioner-Appellant,

v.

WARDEN, ATTICA CORRECTIONAL FACILITY, and Attorney General of the State of New York, Respondents-Appellees.

No. 1227, Docket 82-2363.

United States Court of Appeals, Second Circuit.

Argued May 3, 1983.

Decided May 12, 1983.

Henriette D. Hoffman, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for petitioner-appellant.

Terry Jane Ruderman, Asst. Dist. Atty., Westchester County, N.Y., White Plains,

N.Y. (Carl A. Vergari, Dist. Atty. of Westchester County, Gerald D. Reilly, Asst. Dist. Atty., White Plains, N.Y., of counsel), for respondents-appellees.

Before KAUFMAN and VAN GRAAFEILAND, Circuit Judges, and MISHLER, District Judge.*

IRVING R. KAUFMAN, Circuit Judge:

Willard McPhail appeals from a judgment entered on Judge Leval's order denying his petition for a writ of habeas corpus. He challenges the district court's conclusion that the rule of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (fourth amendment prohibits police from making warrantless and nonconsensual entry into suspect's home to effect "routine felony arrest") will not be applied retroactively on collateral attack. We find it unnecessary to resolve this issue because we believe McPhail was precluded from litigating his fourth amendment claim in a federal habeas forum.

The facts and procedural history relevant to our discussion may be summarized briefly. On October 28, 1974, Detectives Austin Avery and Nicholas Kralik of the White Plains Police Department went to appellant's residence in the Bronx. The officers sought McPhail in connection with the murder, six days earlier, of Anthony Graham. The detectives were admitted into the apartment by McPhail's mother. They observed appellant standing in a hallway between two rooms. Detective Avery immediately informed him of his *Miranda* rights, which appellant indicated he understood, and requested that he accompany the officers to police headquarters. McPhail agreed and the three men proceeded to the 47th precinct. The detectives advised McPhail that two other men had been arrested for homicide and the authorities possessed information indicating McPhail was involved in Anthony Graham's death. During the trip to the police station, appellant discussed the homicide with the officers and

stated Graham had "gotten everything he deserved." Further, appellant described the murder in detail, and supplied the name of one of the participants.

Later that day, Avery and Kralik accompanied McPhail from the 47th precinct to White Plains Police Headquarters. Appellant again discussed the homicide, and informed the officers he had shot Graham in the arm.

The two conversations with the officers were the subject of a pretrial "Huntley hearing," *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), at which appellant challenged the voluntariness of his statements but not the warrantless entry into his home or the arrest which followed. Appellant claimed the *Miranda* warnings he had received were inadequate, and joined in co-defendant James Winston's motion to suppress the latter's statements and an address book seized from him, on the ground there had not been probable cause to arrest Winston. McPhail claimed the information leading to his arrest came from this evidence, alleged to have been obtained illegally from Winston.

All the suppression motions were denied. The court found the officers had probable cause to arrest Winston and to seize his address book, and that the information in it led to McPhail, who voluntarily and intelligently waived his right to counsel before speaking with the detectives. At trial, McPhail again failed to challenge the warrantless entry and arrest. He was convicted of murder in the second degree, second degree kidnapping, and possession of a weapon in the fourth degree. He received sentences of twenty-five years to life on the murder conviction, zero to fifteen years for kidnapping, and time served on the weapons charge. The Appellate Division affirmed the convictions and the Court of Appeals denied leave to appeal. Neither court was presented with the issue appellant now wishes to pursue.

* Of the United States District Court for the Eastern District of New York, sitting by designation.

Following the Supreme Court's decision in *Payton v. New York, supra,* McPhail moved pro se in a *coram nobis* proceeding to vacate the judgments of conviction pursuant to N.Y.Crim.Proc. Law § 440.10(1)(d) (McKinney 1971) (material evidence procured in violation of federal constitution). He argued his arrest violated the fourth amendment standard announced in *Payton,* and statements obtained thereafter had to be suppressed. The state responded that *Payton* should not be applied retroactively. The state court denied McPhail's motion, indicating it "decline[d] to give retroactive effect to [*Payton*]. The defendant's arrest on October 28, 1974, was valid and legal under the laws existing in the State of New York at the time of defendant's arrest." Short Form Order, *reprinted in* Petitioner-Appellant's App. as Exh. G, at 1. Leave to appeal to the Appellate Division was denied. McPhail next brought the instant habeas petition. As we have said, Judge Leval denied it on the ground *Payton* did not apply retroactively upon collateral attack. McPhail now appeals.

■■■ This court, sitting en banc, has made clear that a fourth amendment claim may not be considered by a federal habeas corpus court if the state has provided an opportunity fully and fairly to litigate it. *Gates v. Henderson,* 568 F.2d 830, 837 (2d Cir.1977) (en banc) (construing *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). The focus of this standard is the word "opportunity," and *Gates* means only that the state must make available "a statutory mechanism" for suppression of evidence tainted by an unlawful search or seizure. *Id.* New York clearly complied with this requirement, *see* N.Y.Crim.Proc. Law § 710 (McKinney 1971 & Supp. 1982–1983). Appellant simply failed to employ section 710.

At the *Huntley* hearing, he challenged the voluntariness of his statements to Detectives Avery and Kralik, but not until the state *coram nobis* proceeding did he seek to suppress them as the fruits of an unlawful arrest.

Appellant argues he could not have been expected to raise the *Payton* issue, since *Payton* had not yet been decided. We reject this contention. McPhail's position was no different from that of any litigant challenging a statutorily authorized police procedure as violative of the federal constitution.[1] Obviously, Payton was able to litigate the issue of his warrantless arrest without a solid precedent for his action, and did so, successfully. Moreover, we are not confronted with a Supreme Court pronouncement which represented a sharp break from the prior pattern of fourth amendment jurisprudence. At least since 1971, well before McPhail was apprehended, warrantless home arrests had been deemed "of doubtful constitutionality." *United States v. Johnson,* 457 U.S. 537, 552, 102 S.Ct. 2579, 2589, 73 L.Ed.2d 202 (1982). Indeed, the issue came close to being decided by the Supreme Court, *Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971), so that four of the five courts of appeals expressly considering the question after *Coolidge* correctly anticipated the *Payton* ruling, *compare United States v. Houle,* 603 F.2d 1297 (8th Cir.1979); *United States v. Reed,* 572 F.2d 412 (2d Cir.), *cert. denied sub nom. Goldsmith v. United States,* 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978); *United States v. Prescott,* 581 F.2d 1343 (9th Cir.1978) and *United States v. Killebrew,* 560 F.2d 729 (6th Cir.1977) *with United States v. Williams,* 573 F.2d 348 (5th Cir.1978), and two other circuits had assumed without deciding that warrantless home arrests were unconstitutional, *United States v. Davis,* 461 F.2d

---

1. The statute considered in *Payton,* N.Y.Crim. Proc. Law § 140.15(4) (McKinney 1971), provided, with regard to arrest without a warrant that

a police officer may enter premises in which he reasonably believes [a] person [whom he has reasonable cause to believe has committed an offense, N.Y.Crim.Proc. Law § 140.10] to be present, under the same circumstances and in the same manner as would be authorized, by the provisions of [§ 120.80(4), (5), governing arrest warrants], if he were attempting to make such arrest pursuant to a warrant of arrest.

1026 (3d Cir.1972); *United States v. Bradley,* 455 F.2d 1181 (1st Cir.1972). Thus, we conclude McPhail was in a position, before his trial and well before the *coram nobis* hearing, to raise the warrantless entry and arrest claim.

Appellant also claims we should apply the rationale of *Klein v. Harris,* 667 F.2d 274 (2d Cir.1981). In *Klein,* we held a federal habeas court may reach the merits of a constitutional claim not timely raised in the state courts if the state appellate courts themselves reach the merits. *Klein* construed the procedural forfeiture rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The majority concluded the concerns underpinning the *Sykes* decision—comity, finality, accuracy, and trial integrity—were protected adequately by the state's right to invoke a procedural bar to belated post-trial litigation of claimed pre-trial and trial infirmities. But, "where the state courts have, for whatever reason, declined to 'respect' state rules of procedure," *Klein, supra,* 667 F.2d at 286, they have manifested a willingness to have substantive issues considered. *See also Mitchell v. Smith,* 633 F.2d 1009 (2d Cir.1980), *cert. denied,* 449 U.S. 1088, 101 S.Ct. 879, 66 L.Ed.2d 814 (1981). McPhail correctly argues the state *coram nobis* court decided the retroactivity issue on the merits, and contends therefore we may reach it as well. We disagree.

Our decision in *Gates v. Henderson, supra,* refusing to permit litigation of a fourth amendment claim, even where the state appellate courts had refused to hear it, did not depend upon state invocation of a procedural bar. Rather, we were satisfied that *Stone v. Powell, supra,* had foreclosed federal habeas review of exclusionary rule contentions except in the rare case where the state provided no corrective procedures at all, or there had been an "unconscionable breakdown" in state process which prevented utilization of an existing procedural remedy. *Gates, supra,* 568 F.2d at 840. The conceptual basis of *Stone v. Powell*[2] compelled our conclusion: "To permit a hearing now[, many] years later, after memories have long since dimmed, to determine what cause the police had at that time to make an arrest would be neither just to society nor effectuate the rationale of the exclusionary rule—police deterrence." *Id.*

Accepting appellant's contention that New York has demonstrated its willingness to hear the merits of his fourth amendment claim (by denying the section 440 motion on retroactivity grounds), we think this case is *a fortiori* to *Gates,* since McPhail has been provided more than the unutilized "opportunity" to litigate we there deemed sufficient. Accordingly, relitigation is barred.

The judgment of the district court is affirmed.

---

**2.** The additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs. To be sure, each case in which such claim is considered may add marginally to an awareness of the values protected by the Fourth Amendment. There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be over-

turned in collateral proceedings often occurring years after the incarceration of the defendant. The view that the deterrence of Fourth Amendment violations would be furthered rests on the dubious assumption that law enforcement authorities would fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal. Even if one rationally could assume that some additional incremental deterrent effect would be present in isolated cases, the resulting advance. of the legitimate goal of furthering Fourth Amendment rights would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice.

*Stone v. Powell, supra,* 428 U.S. at 493–94, 96 S.Ct. at 3051–52 (footnotes omitted).