Jesus WOODS, Petitioner,

v.

Robert KUHLMANN, Superintendent of Sullivan Correctional Facility, Respondent.

No. 87 Civ. 0052 (RWS).

United States District Court, S.D. New York.

Jan. 6, 1988.

---

Michael B. Pollack, New York City (Jonathan J. Silbermann, of counsel), for petitioner.

Mario Merola, Dist. Atty., Bronx County, Bronx, N.Y. (Stacey K. Edelbaum, Asst. Dist. Atty., of counsel), for respondent.

## OPINION

SWEET, District Judge.

Petitioner Jesus Woods ("Woods") has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Woods was convicted, after a trial by jury, of criminal possession of a weapon in the third degree and was sentenced on October 5, 1983 to an indeterminate term of imprisonment of from three to six years. On November 29, 1984, the Appellate Division, First Department, confirmed the judgment of conviction without opinion. Leave to appeal that decision to the Court of Appeals was denied on March 15, 1985.

In the instant petition, filed on January 6, 1987, Woods asserts that the state conviction must be set aside on three grounds: (1) that Wood's arrest was made without probable cause and, therefore, that the weapon that was allegedly retrieved pursuant to a search incident to the arrest should have been suppressed; (2) that the trial court improperly precluded cross-examination of the prosecution's main witness; and (3) that the prosecutor improperly cross-examined Woods concerning his post-arrest silence. The respondent's answer was filed on August 28, 1987. For the reasons set forth below, the petition is granted.

### The Suppression Hearing

On December 14, 1982, a Bronx County Grand Jury charged Woods with criminal possession of a weapon in the third degree. Prior to trial, a hearing was held on Wood's motion to suppress the gun that was the subject of the indictment. The transcript of the suppression hearing reveals the following testimony, most of which was not adduced at trial but which nonetheless forms the basis for Wood's petition.

On September 14, 1982, Police Officer Gary Carlo ("Officer Carlo") was assigned to investigate the theft of a 1982 Pontiac Trans Am from the Prime Pontiac dealership on East Tremont Road in the Bronx. During a test drive on September 14, a man described as a light-skinned Hispanic accompanied by a woman pulled a gun on the salesman, forced him to disembark and stole the car. One week later the car was returned to the dealership. Upon examining the returned vehicle, Officer Carlo found a florist's receipt dated September 20, 1982, which indicated that a person named "Jesus" had ordered $165 worth of flowers to be delivered to a Joanne Bevilacqua ("Bevilacqua") at 1234 Mayflower Avenue.

In connection with his investigation, Officer Carlo interviewed the florist, Bevilacqua and Barry Zwilling ("Zwilling"), the general manager of Prime Pontiac. The

florist told Officer Carlo that the customer who had placed the order was a male Hispanic or caucasian of average height who drove a black Trans Am. Bevilacqua told Officer Carlo that she had received the flowers from her boyfriend Jesus Woods who at the time was driving a black Fire Bird. Officer Carlo then traced the telephone number on the florist's receipt through the Coles book to an E. Woods at 2004 Ellis Avenue. He called the number, spoke to a person who identified himself as Jesus Woods and asked Woods if he could come over and speak with him. Woods admitted that he had sent the flowers, but he declined the request for an interview.

When interviewed by Officer Carlo, Zwilling declined to identify Woods as the person who had stolen the car. Zwilling testified at the hearing that he had known Woods since 1978 or 1979 and that Woods and his brother, John Woods, had purchased two cars from him, both Pontiac Trans Ams. Zwilling testified that he told Officer Carlo at least two or three times that Woods had not stolen the car. Zwilling's testimony as to his statements to Officer Carlo was confirmed by Officer Carlo.

Finally, Officer Carlo testified that he had filed a sworn complaint on a date not revealed by this record that Prime Pontiac had made a complaint that Woods was illegally in possession of the stolen automobile.

In the afternoon of November 29, 1982, Officer Carlo and his partner Officer James Flaherty ("Officer Flaherty") were on anti-crime patrol in plain clothes in an unmarked car when they observed a late model Volvo with no front license plate travelling westbound on Watson Avenue. The officers, who were proceeding eastbound, made a u-turn and followed the car, which stopped in front of 2004 Ellis Avenue. Woods was exiting the car as the officers approached. Officer Carlo and his partner identified themselves as police officers and requested Wood's license and registration. According to the officers, Woods could not produce a license, registration or personal papers of any kind. He did produce a garage receipt bearing the name of John Woods and told the officers that the car

belonged to his brother. At this point Officer Carlo asked Woods his name, and he replied "Jesus Woods." Officer Carlo then informed Woods he was under arrest for possession of a stolen automobile, the Trans Am. According to Officer Carlo, when he and his partner attempted to handcuff Woods, he turned his body and reached toward his back. The officers grabbed his arm and retrieved a loaded .380 automatic pistol from Wood's rear waistband.

John Woods also testified at the suppression hearing. He stated that the Volvo was his and that he had loaned it to his brother on November 29, 1982. He stated further that the license plate was not affixed to the front of the car but was displayed in the front windshield and that the registration and insurance card were in the car on that day. He testified that he looked at the car after his brother's arrest and observed that the license plate was still inside the front windshield and that the insurance papers and registration card were inside the glove compartment.

After the hearing concluded, the trial court denied the motion to suppress the gun over the objections of defense counsel that the officers did not have probable cause to arrest Woods on the stolen car charge and that a search for a weapon is not permissible pursuant to an arrest for a traffic infraction. The trial court concluded that Officer Carlo had probable cause to arrest Woods for a violation of New York's Vehicle and Traffic Law.

**The Trial**

At trial, Officers Carlo and Flaherty repeated the testimony they had given at the suppression hearing concerning their questioning of Woods over the apparent traffic violations, their arrest of Woods and their recovery from Woods of the loaded gun. The officers did not testify as to any circumstances related to the stolen automobile charge.

On cross-examination, defense counsel asked Officer Carlo to identify the charge that the officer had told Woods he was being arrested for on November 29, 1982. After the trial judge had sustained the

prosecution's objection to this question, argument was heard out of the presence of the jury. Defense counsel contended that cross-examination as to all the circumstances of the arrest, including the stolen property charge and the sworn complaint, was essential to the defense's attempt to test the credibility and possible bias of the officer. The trial judge concluded that facts concerning the stolen property charge and the sworn complaint were "irrelevant" to the charge of criminal possession of a weapon.[1] The trial judge threatened defense counsel with contempt of court and, thereafter, sustained objections to a series of questions concerning Officer Carlo's investigation of the stolen car complaint and the extent of his information concerning Woods prior to the arrest on November 29, 1982. At a sidebar following one of the objections, defense counsel argued, unsuccessfully, that the judge's rulings with respect to cross-examination denied Woods his Sixth Amendment right of cross-examination and confrontation.

Two witnesses of the arrest, Agustin Maldonado and Thomas Oman, testified that after seeing Woods handcuffed and placed in the rear of the police vehicle, they saw the vehicle stop and observed the officers remove Woods from the vehicle, beat him, push him back in the car and drive away.

Woods testified in his own behalf. He related that Officers Flaherty and Carlo had approached him and asked for his license and registration as he was getting out of his car. He asserted that the registration and insurance card for the vehicle were in the glove compartment and that he produced them but told the officers he would have to go to his house to get his license. Woods stated that when he gave the officers his name, they handcuffed him and put him in the back seat of the police car. He testified that the officers drove him down the street, stopped, took him

from he car and punched and kicked him at least ten times, and then threw him back into the car. Woods stated that at that time Officer Carlo reached under the front seat and pulled out a gun. Finally, Woods testified that he never touched the gun and that he went to the hospital the next day for treatment but never reported the officers' misconduct.

After rereading the testimony of Officers Carlo and Flaherty, the jury found Woods guilty of criminal possession of a weapon in the third degree. Woods appealed his judgment of conviction in the New York State courts raising all of the grounds that he presents in the instant petition.

### Wood's Fourth Amendment Claim

■ A federal court lacks the authority to consider a habeas petitioner's Fourth Amendment claim if the state has provided an opportunity fully and fairly to litigate it. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67 (2d Cir.1983); *Gates v. Henderson*, 568 F.2d 830 (2d Cir.1977) (*en banc*), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). The possibility that a federal court would have reached a different result from the state court does not remove *Stone v. Powell*'s barrier to review of the Fourth Amendment claim. *Gates*, 568 F.2d at 840; *Shaw v. Scully*, 654 F.Supp. 859, 863 (S.D.N.Y.1987). In this Circuit, a federal court will review a Fourth Amendment claim only where the petitioner was "precluded from utilizing [the available state process] by reason of an unconscionable breakdown in that process." *Gates*, 568 F.2d at 840; *see Cruz v. Alexander*, 477 F.Supp. 516, 522–23 (S.D.N.Y. 1979) (breakdown in state process deprived petitioner of full and fair opportunity to litigate his claim).

---

1. In his opening statement, defense counsel attempted to explain to the jury the significance of the police complaint concerning Prime Pontiac's stolen automobile. The prosecutor objected, and a sidebar occurred. The trial judge told defense counsel that "he cannot speak about the other case not before me, it has nothing to do with the case." It appears that the trial judge was referring to the stolen automobile complaint, which apparently was never the subject of an indictment. Although the record does not reveal what became of the stolen automobile complaint, Woods was tried solely on the charge of criminal possession of a stolen weapon.

Here, Woods took full advantage of the available state process by presenting his Fourth Amendment claim at both the suppression hearing and in his briefs to the state appellate courts. The transcript of the hearing does not reveal that the trial judge improperly restricted Woods' ability to participate in the hearing. Nevertheless, Woods argues that the trial court's erroneous fact-finding and refusal to consider the pertinent issues during the suppression hearing constituted an "unconscionable breakdown" in state process. The doctrine of *Stone v. Powell*, however, forbids *de novo* review of state court fact-finding on a Fourth Amendment issue particularly where, as here, the petitioner can claim only that the issue was wrongly decided. Accordingly, Woods' request for relief on the basis of his Fourth Amendment claim is denied.

### Woods' Sixth Amendment Claim

■ Woods contends that the trial judge deprived him of his rights under the Sixth Amendment by ruling that his defense counsel could not attempt to impeach the prosecution's main witness, Officer Carlo, by cross-examining him with respect to the stolen automobile charge, Woods' arrest on that charge, and Officer Carlo's sworn complaint relating to that charge. In *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court reaffirmed the fundamental importance of an accused's Sixth Amendment rights:

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, *Pointer v. Texas*, 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965), "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. [308] at 315 [94 S.Ct. 1105, 1110, 39 L.Ed. 2d 347 (1974)]. Indeed, " '[t]he main and

essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*' " *Id.*, at 315–316 [94 S.Ct. at 1110] (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) ... Of particular relevance here, "[w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis, supra,* at 316–317 [94 S.Ct. at 1110] (citing *Greene v. McElroy*, 360 U.S. 474, 496 [79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377] (1959)).

*Van Arsdall,* 475 U.S. at 678–79, 106 S.Ct. at 1435. As the Court in *Van Arsdall* was careful to point out, however, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679, 106 S.Ct. at 1435.

Here, the trial court barred all inquiry into Officer Carlo's stated reason for Woods' arrest, the officer's sworn complaint and all other circumstances related to the officer's investigation of the stolen automobile complaint. Through such cross-examination, Woods' counsel sought to present to the jury the testimony that had been elicited at the suppression hearing; namely, that although Officer Carlo had been told by Zwilling, the general manager of Prime Pontiac, that Woods was not involved in the theft of the Trans Am, he had nevertheless sworn out a complaint, in which he purported to rely expressly on statements from the complainant Prime Pontiac, alleging that Woods had knowingly and unlawfully possessed a stolen automobile.[2] The trial court's ruling prevented Woods' counsel from offering evidence to the jury that Officer Carlo had made a prior statement under oath concerning Woods that Woods' attorney could then

---

**2.** During cross-examination of Officer Carlo during the suppression hearing, Woods' defense counsel was able to elicit inconsistent statements from the witness concerning the information he had gathered from the complainant Prime Pontiac and the information he had written down as having been obtained from Prime Pontiac in his sworn complaint against Woods for possession of a stolen automobile.

attempt to show was at minimum inconsistent with his present testimony and at worst false.[3] Thus, the trial court deprived Woods of a fertile area of inquiry plainly relevant to the jurors' determination of Officer Carlo's credibility. By cutting off all questioning about events that were inseparable from the alleged recovery of the weapon from Woods, the trial court violated Woods' rights secured by the Confrontation Clause. *Cf. Klein v. Harris,* 667 F.2d 274, 289–91 (2d Cir.1981).

Having found that error of constitutional dimension occurred at Wood's trial, the question remains whether this constitutional error was "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *see Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) (Confrontation Clause); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) (Confrontation Clause). In overturning the Delaware Supreme Court's application of the automatic reversal rule in *Van Arsdall,* the Supreme Court stated the parameters of a district court's inquiry into whether a Confrontation Clause violation was harmless beyond a reasonable doubt:

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438.

■ Once a petitioner establishes the infringement of a constitutional right, the burden shifts to the state to establish that the error was harmless. *Hawkins v. Le-Fevre,* 758 F.2d 866, 877 n. 15 (2d Cir.1985). The state purports to meet its burden by arguing that "the issue at trial was whether petitioner possessed a gun on November 29, 1982, not whether he possessed a stolen car a few months before." Furthermore, the state contends, Woods "failed to lay any proper foundation at trial which would lead the court to believe that there might exist some prejudice or bias against petitioner by these police officers." The state's contentions ignore not only the repeated efforts by defense counsel to persuade the trial court of the relevance of inquiry into the conduct of the arresting officers at the moment of arrest but also the fact that the state's case against Woods rested in large measure on the credibility of Officer Carlo's testimony.

■ Applying the *Van Arsdall* factors to this case, the constitutional error was not harmless. In order to convict Woods, the jury had to credit the testimony of Officers Carlo and Flaherty who were the only witnesses as to the critical issue of possession, which was contradicted by Woods who testified that they had planted the gun and by Maldonaldo who testified that he had observed the officers making the arrest and saw no gun being recovered. There was no evidence which could have substituted for the testimony of Officer

---

**3.** Officer Carlo's sworn complaint would have been admissible for impeachment purposes under Fed.R.Evid. 613(a). To avoid exclusion as hearsay, the complaint could have been offered under Fed.R.Evid. 803(6) which excepts from the hearsay rule certain reports if kept in the course of a regularly conducted business activity. *See Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,* 605 F.2d 1228, 1250–51 (2d Cir.1979) (police officer's signed complaint report admitted under Rule 803(6)); *see also* Fed.R.Evid. 803(8)(C) (excepts from hearsay rule "records, reports, statements, ... of public offices or agencies, setting forth ... in civil actions and proceedings and against the

Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."); Fed.R.Evid. 801(d)(1)(A) (prior inconsistent statement by witness "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding."); 4 J. Weinstein, *Evidence* ¶ 801(d)(1)(A)[03] (cross-examination can probe the witness' perception and memory and can develop all the reasons why the witness made a statement which his present testimony indicates was not true).

Carlo concerning the misrepresentations in his sworn complaint against Woods on the stolen car charge. The trial court also precluded cross-examination concerning the officers' general activities to enforce the traffic laws, which could have supported the inconsistency of Officer Carlo's statement relating to the cause for the arrest. Given the presumption of credibility that attaches to the testimony of law enforcement officers, the constraints placed on Woods' attorney's ability to impeach the arresting officers by inquiry into the very events that gave rise to weapons charge against Woods cannot be sanctioned.

In sum, the trial court barred cross-examination of the prosecution's main witnesses concerning matters that were relevant to the credibility of both the prosecution's main witness and the defense presented by Woods. As the Supreme Court stated in *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974):

> A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore, Evidence § 940, p. 775.

The importance of the officers' testimony to the prosecution's case precludes a finding that the trial court's unconstitutional prohibition on cross-examination of those witnesses, particularly Officer Carlo, was harmless error. Accordingly, Woods' petition will be granted on the basis of the trial court's violation of his Sixth Amendment rights.

### Wood's Fourteenth Amendment Claim

In *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), the Supreme Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." The Court's decision was based on its recognition that silence in the wake of *Miranda* warnings may be nothing more than the arrestee's exercise of those rights. *Id.* at 617, 96 S.Ct. at 2244. The Court also found that since the *Miranda* warnings convey an implicit assurance to a suspect that his silence will not be used against him, it would be "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618, 96 S.Ct. at 2245.

In the present case, the prosecution attempted to impeach Woods by cross-examining him as to his failure to tell "any public agency, or the police department or the District Attorney's office" about his exculpatory version of the facts, that is, that the police officers beat him and planted the gun on im. Woods responded that he had told both his attorney at his arraignment and the attorney who represented him at trial his version of the facts. Under ordinary circumstances, the prosecution's behavior would be a straightforward violation of the due process rights articulated in *Doyle*. However, in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (*per curiam*), the Supreme Court summarily reversed an attempt by the Court of Appeals for the Sixth Circuit to apply *Doyle* in a case where the record did not indicate that the defendant had been given any *Miranda* warnings. In *Fletcher*, the Supreme Court stated, "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." *Fletcher*, 455 U.S. at 607, 102 S.Ct. at 1312. Accordingly, because the record here does not reflect that Woods received any *Miranda* warnings during the period in which he remained silent following his arrest, this court feels constrained by the Supreme Court's decision in *Fletcher* to hold that Woods' constitutional rights were not violated by the prosecution's inquiry into his postarrest silence.

For the reasons set forth above, the petition for a writ of habeas corpus is granted and the conviction set aside. Woods is to be released unless the State promptly affords him a new trial.

IT IS SO ORDERED.