**John BROWN, Plaintiff,**

v.

**Senior Parole Officer DE FILLIPIS, et al., Defendants.**

**No. 87 Civ. 3498 (RWS).**

United States District Court,
S.D. New York.

July 7, 1989.

John Brown, Woodbourne, N.Y., pro se.

Robert Abrams, Atty. Gen., New York City, for defendants; Brian T. McGovern, Asst. Atty. Gen., of counsel.

## OPINION

SWEET, District Judge.

Defendant Senior Parole Officer De Fillipis ("De Fillipis"), *et al.* ("defendants"), move pursuant to Fed.R.Civ.P., Rule 12(c) to dismiss the complaint of plaintiff *pro se* John Brown ("Brown"). Brown has moved for an appointment of counsel pursuant to 18 U.S.C. § 3006A(g) and to supplement his complaint pursuant to Fed.R.Civ.P., Rule 15(d). For the reasons set forth below defendants' motion to dismiss the complaint is granted.

*The Parties*

Defendant de Fillipis is the Senior Supervisor of the New York City Absconder Search Unit ("ASU"). Defendant Bobby Carter ("Carter") and Senior Officer Jeffrey Getz ("Getz") are parole officers at the Division of Parole in Bronx County. Defendant Paul Rosen ("Rosen") and defendant Ernest Tasker ("Tasker") are parole officers assigned to the ASU.

Eugene Cordaro ("Cordaro") is an attorney in Mineola, New York.

Plaintiff Brown is a prisoner of New York State in the custody of Woodbourne Correctional Facility.

*Prior Proceedings*

Brown filed the complaint in this action on December 4, 1986. By order and judgment entered May 27, 1987 the court *sua sponte* dismissed the complaint as to two other defendants and as to these defendants for all claims except the alleged Fourth Amendment claims without prejudice for failure to state a claim upon which relief could be granted. The defendants

filed this motion to dismiss on December 27, 1988 which was marked submitted on April 29, 1989. Brown filed several discovery motions, one of which was granted. However, the depositions that were the subject of that motion have not been taken as of this time. Brown moved for appointment of counsel on April 28, 1989. Brown also moved to supplement his complaint on June 15, 1989. The facts set forth below are derived from the pleadings and from an unrebutted affidavit submitted in support of the motion.

*The Facts*

On February 25, 1982, Brown was conditionally released on parole from the Attica Correctional Facility after having served the minimum on a ten year sentence for a 1979 conviction of assault in the first degree. According to the defendants Brown signed a consent certificate to the conditions of his release at the time of his release.

According to Officers Carter and Berry, they went to court on February 18 to meet Brown, but he did not appear. A bench warrant was issued, but stayed until February 23. The officers returned to court on February 23 and when Brown failed to appear again, the bench warrant was executed.

According to Officer Berry, on November 25, 1983, he received two phone calls informing him of Brown's whereabouts. In one call an anonymous tipster stated he had seen a "Sonny Brown, the one that has the parole warrant" near Boynton and Watson Avenues in the Bronx shooting a gun at someone. Brown had the listed the name "Sonny Brown" as an alias on his parole release form. The second caller, whom officer Berry knew, gave Brown's address as 2766 Decatur Avenue, Room Four. Berry contacted the ASU and arranged a date on which to apprehend Brown.

On November 28, 1983, Carter, Berry, Rosen, Tasker and De Fillips went to the address above to arrest Brown on the parole violation warrant. Berry and De Fillips stationed themselves outside the house to prevent Brown from escaping. Carter,

Rosen and Tasker went to the front of the house where Carter introduced himself as a parole officer to Mr. Simpson Bailey ("Bailey"), the landlord of the premises, and informed him he had a parole warrant. Bailey testified at the suppression hearing that the officers did not give him a name of the person for whom they were searching and that when the officers entered the vestibule of the building they started taking out their pistols and cocking the hammers.

Bailey indicated there was a man named "Sonny Brown" matching the physical description of Brown residing in room four. Bailey took the officers upstairs and opened Brown's room with a passkey. The officers did not knock or announce their entrance to the room prior to entering. Once inside the room Carter yelled "parole" and ordered Brown not to move. The officers allege Brown was in bed in a kneeling position looking towards his pillow. Carter checked beneath the pillow and found a loaded .38 caliber revolver. Rosen found a loaded twelve gauge sawed-off shotgun next to Brown's bed.

The officers handcuffed Brown and read him his Miranda rights. Brown indicated that he understood each right. Brown then stated he was not going to say anything further. However, as Carter and Tasker were examining the .38 caliber pistol they had recovered, Brown interjected that the gun was "inoperable" and would "get me killed out in the street." Rosen responded "if the gun is so inoperable, would you be willing to take a bullet in the head with it." to which Brown answered "no, no, no." Rosen testified that he had no intention of using the gun on Brown no matter what his response would have been. Two officers then left to obtain a search warrant. Although Berry told him he did not have to say anything, Brown told Berry to look under the bed, where he found a suitcase containing cocaine and drug paraphernalia. Brown contends the drugs and guns were planted by the officers.

Brown was arrested and charged in the Supreme Court, Bronx County with two counts of criminal possession of a weapon, third degree and one count of criminal pos-

session of a controlled substance, third degree. At the preliminary violation of parole hearing the hearing officer found probable cause to hold plaintiff for a final hearing. However, Brown's final parole hearing was not held within the 90 day statute of limitations. Brown then filed a writ of Habeas Corpus. Judge Burton Hecht of the Supreme Court of New York, Bronx County, ordered the writ sustained and the parole violation detainer warrant vacated and dismissed with prejudice.

Brown subsequently filed a motion for dismissal of his indictment scheduled to be heard September 4, 1984. Brown also drafted a *pro se* motion for a suppression hearing. That motion was denied. However, the court appointed Cardero as Brown's counsel, and the court held the motion to dismiss in abeyance to allow for a determination of whether Cardero could reargue the suppression hearing. On September 13, 1989, the motion to reargue the suppression hearing was granted and scheduled for October 3, 1984.

Brown alleges that he suggested to his attorney, Cordaro, that he should seek to renew the suppression motion rather than reargue it. He also argues that his attorney was absent and that he was unaware that the motion to which Judge Collins referred at the September 13 hearing was the motion to dismiss, and therefore was denied an opportunity to be heard on that motion. Judge Collins stated in his denial papers that Brown did not contest the motion. Brown further alleges that he so informed his attorney and that Cordaro stated he would bring this information to the attention of the judge at the suppression hearing. Brown alleges that Cordaro never did so.

### 1. *The Suppression Hearing*

The suppression hearing was held before the Honorable Joan C. Sudolnix on October 3, 1984. At the hearing Brown argued that the physical evidence should be suppressed because the parole officers did not give notice of their authority and purpose before entering his room as required by Criminal Procedure Law section 120.80, subd. 4.

He further argued that none of the statutory exceptions to this section applied in this case.

Brown also contended that all his statements to the officers should be suppressed because when he made them he was represented by an attorney on a pending, open case. He further alleged that his statements were involuntary and the result of an unlawful detention, and that they were therefore a violation of his Sixth Amendment right to Counsel.

Brown, as well as his attorney, was present throughout the hearings, and through counsel, cross-examined each of the three prosecution witnesses (three of the arresting parole officers) and called two witnesses on his behalf (a parole officer and plaintiff's landlord). Brown did not testify. Following testimony, Brown and the District Attorney rested, and the court then heard both parties's arguments on the applicable law and the evidence adduced at the hearing. Brown through counsel was then given the opportunity to make a rebuttal argument. The court reserved decision on the motion.

According to the defendants, on October 9, 1984, just prior to the court's rendering its decision, Brown stated to the court that he had not testified at the hearings on his attorney's advice (according to his attorney, because of the risk of cross-examination), and requested that the hearings be reopened to permit him to testify. Brown then proceeded to make several arguments, one of which concerned the validity of the parole violation warrant pursuant to which he was arrested. Although the court did not reopen the hearings for a full examination and cross-examination of plaintiff under oath, the court nevertheless indicated that it would consider Brown's arguments when making its findings and conclusions.

The hearing court, crediting the testimony of the witnesses Officers Carter, Berry, Rosen, and Tasker, found that the parole officers lawfully entered Brown's room with the landlord's pass key and with guns drawn. Specifically, the court found that Brown had demonstrated by his criminal past, a "proclivity for assaultive behavior"

and a "pattern of use and involvement with guns." The court concluded that because Brown was on parole for assault with a gun, had prior convictions involving the use of guns and had been arrested for possession of a loaded weapon in February of 1983, and the officers had just received a report that Brown had recently been sighted brandishing a gun on the street, it would have been "foolhardy" for the officers to have knocked on Brown's door, identified themselves and announced their purpose.

Further, the court found it reasonable for the officers to believe that Brown, if given the opportunity, would have attempted to escape because Brown had violated numerous parole conditions, including being arrested and failing to report to his parole officer, his arrest, his change of address, his leaving his place of employment, and his using an alias and because he had demonstrated a complete disregard for the law by his deliberate failures to return to court on February 18 and 23 following his arraignment on his most recent arrest. Accordingly, the court concluded that it was reasonable to believe Brown would attempt to escape had he been given any notice, rather than submit to an arrest and face the certain prospect of returning to prison. The court, therefore, found that the parole officers were justified pursuant to Criminal Procedure Law section 120.80 subd. 4, in entering the room without knocking, identifying themselves or announcing their purpose. Since the arrest was lawful, the items seized from Brown's immediate vicinity or control pursuant to that arrest were lawfully seized. Accordingly, the court denied Brown's motion to suppress physical evidence.

The court also ruled on Brown's motion to suppress his statements, denying it in part and granting it in part. Having found that Brown's right to counsel had attached, the court found that any statements Brown made as a result of a question put to him or a comment made to elicit a response had to be suppressed. Accordingly, the court suppressed Brown's statement, "no, no" made in response to Rosen's question and also suppressed Brown's statement, "To look under the bed" which he made after Berry informed him that the other officers had gone out to obtain a search warrant.

The court found that Brown uttered the remainder of his statements completely voluntary and spontaneously beyond a reasonable doubt. Consequently, Brown's statements regarding the operability of the revolver, as well as his statement to Berry that, "You got me for a parole violation. You don't need a bust for weapons" were deemed admissible.

### 2. *The Plea and Sentence*

Thereafter, Brown, in accordance with a negotiated plea and sentence agreement, offered to plead guilty to two counts of criminal possession of a weapon in the Third Degree [Penal Law § 265.02] and one count of criminal possession of a controlled substance [Penal Law § 220.16(1)]. Pursuant to the plea agreement, the court would sentence Brown as a second felony offender to an aggregate term of 7 years to 14 years imprisonment.

Prior to the court's acceptance of his plea, the court questioned Brown about his plea to confirm that it was made knowingly and voluntarily. Brown acknowledged to the court that he had had sufficient time to discus the plea with his attorney, and that he understood the nature of the criminal charges against him and the consequences of pleading guilty, including his waiver of his constitutional rights that attend the trial of a criminal defendant. He further acknowledged that the plea was made freely and without coercion, and specifically indicated that the only promise or condition to his plea was a promise of a 7 to 14 year sentence. Finally, he specifically admitted, among other things, to having unlawfully possessed a loaded weapon and narcotics found in his apartment on February 28, 1983, and acknowledged that he was only pleading guilty because he was, in fact, guilty. The court then confirmed with Brown's attorney that the attorney had had a full opportunity to discuss the plea with his client, and was satisfied that his client understood the charges against him. The court then accepted the plea, and set the

case down for sentencing one week later, when the court would have received and reviewed Brown's probation report.

Prior to sentencing, however, on October 26, 1984, Brown asked to withdraw his plea, asserting that he was innocent, that his plea was coerced by his attorney and that he made his plea when he was "under stress and strain." In rejecting his application, the court noted on the record that the plea had been the result of extensive bargaining among the prosecutor, the court and Brown through his counsel, and that the plea was not made in "a hurried situation." The court also noted that Brown had had extensive prior contacts with the criminal justice system, had pled guilty before, and knew the implications of pleading guilty, and had so acknowledged to the court one week earlier that he knew. From the court's observation of Brown in court and from the information concerning Brown contained in his probation report, the court further noted that "no one coerces Mr. Brown or is capable of forcing Mr. Brown to do other than what Mr. Brown is willing to do," and concluded that the "plea that was entered on October 9, 1984, was knowingly, voluntarily, and intelligently entered." The court, therefore, denied Brown's motion and imposed the determined sentence.

Brown appealed the conviction to the Appellate Division, First Department, raising as grounds the lawfulness of the arrest, the validity of his guilty plea, the denial of his request to reopen the hearings, and the veracity of certain of the parole officers' testimony, among others. By order dated September 29, 1987, the Appellate Division unanimously affirmed the conviction without opinion. Brown thereafter sought but was denied leave to appeal to the New York State Court of Appeals.

### The Pleadings

Brown subsequently filed this action *pro se* alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights and that defendants Carter and Berry committed perjury at the suppression hearing by alleging that they had visited Brown's place of employment and spoke with some of the employees there of Brown's whereabouts. He now seeks a declaratory judgment, a preliminary and permanent injunction against the defendants, and a lien on all their properties. Brown also seeks compensatory and monetary damages from each defendant.

### Motion to Supplement the Complaint

Brown's motion to supplement his complaint is denied for the reasons set forth below.

■ Federal Rule of Civil Procedure 15(d) provides that the court may, upon reasonable notice and just terms, permit a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the original pleading. The Second Circuit has held that where the original complaint fails to state a claim upon which relief can be granted, leave to serve a supplemental complaint must be denied. *Bonner v. Elizabeth Arden, Inc.*, 177 F.2d 703 (2d Cir. 1949).

Here Brown does not allege any transactions, occurrences or events which have happened since December 4, 1986, the date of the original pleading. Rather his supplemental complaint includes allegations as to incidents which occurred before he filed the original complaint that were inadvertently left out of the original complaint. Further, the original complaint does not set forth a claim upon which relief can be granted. Therefore, the motion to serve a supplemental complaint is denied.

■ In the alternative Brown seeks leave to amend the new pleading and file it as an original complaint. Regardless of the procedural manner in which Brown raises this issue, he is essentially seeking to amend his original complaint. As such Brown's motion to amend is denied. Fed. R.Civ.P., Rule 15(a) provides that leave to amend pleadings should be freely given when justice so requires. However, the Supreme Court has stated that leave to amend should not be granted where there exists undue delay, bad faith or dilatory notice on the part of the mover, undue prejudice to the opposing party, or futility

of the amendment. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

At least two of these factors are present here. Brown has moved to amend his complaint 2½ years after filing the original complaint to include facts within his knowledge at the time the original complaint was filed. Brown cannot assert a litigable claim for any constitutional violations, nor can he support a claim of ineffective assistance of counsel. The following discussion illustrates that this amendment would prove futile. Therefore Brown's motion to file an amended complaint is denied.

*Standard for a Judgment on the Pleadings*

A motion for a judgment on the pleadings under rule 12(c) is to be treated as one for summary judgment and disposed of as provided in rule 56 if matters outside the pleadings are presented to and not excluded by the court. Fed.R.Civ.P. 12(c). Such a motion is for judgment on the merits and should only be granted if no material issue of fact remains and the moving party establishes that he is entitled to judgment as a matter of law. 2A J. Moore & J. Lucas, *Moore's Federal Practice,* § 12.15 (2d ed. 1948); *Raffa v. Califano,* 454 F.Supp. 125 (S.D.N.Y.1978). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Corselli v. Coughlin,* 842 F.2d 23 (2d Cir.1988). In considering the motion, the court should assume all of the well pleaded factual allegations in the adversary's pleadings to be true and all contravening assertions in the movant's pleadings are taken as false. *National Metropolitan Bank v. U.S.,* 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945); *Beal v. Missouri Pac. R.R. Corp.,* 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *see also, McDonald v. Du Maurier,* 144 F.2d 696 (2d Cir.1944). 5 C. Wright, A. Miller, *Federal Practice and Procedure* § 1368 at 689 (1969). The defense of estoppel is properly raised on a motion for judgment on the pleadings. *Blonder–Tongue Laboratories, Inc. v.* *University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

*Collateral Estoppel and Res Judicata*

Under New York law, consistent with federal law principles of *res judicata* and *collateral estoppel,* a prior state court determination will be given preclusive effect against a party if (1) there has been a final judgment on the merits; (2) the identical issues necessary to its judgment were or could have been raised in the prior state action or proceeding; and (3) the party against whom the determination is applied was a party to the prior action of proceeding and had a full and fair opportunity to litigate the issue. *See, e.g., Vavolizza v. Krieger,* 33 N.Y.2d 351, 352, 308 N.E.2d 439, 352 N.Y.S.2d 919 (1974); *Schwartz v. Public Administrator of County of Bronx,* 24 N.Y.2d 65, 71–73, 246 N.E.2d 725, 298 N.Y.S.2d 955 (1969). *Accord, Winters v. Lavine,* 574 F.2d 46, 58–60 (2d Cir.1978). In a § 1983 action alleging unlawful arrest, the federal court must, in applying the doctrines of res judicata and collateral estoppel, "give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Board,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). *See* 28 U.S.C. § 1738. *Accord, Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

■ Moreover, preclusive effect is given in a § 1983 action to issues previously decided in state court criminal proceedings as well as civil proceedings, provided that the same effect is given in state court. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The Supreme Court has held that the doctrines of *res judicata* and *collateral estoppel* bar a § 1983 action by a criminal defendant for an alleged violation of his Fourth Amendment rights where the state court, after a full and fair hearing, has ruled that the defendant's

Fourth Amendment rights were not violated, and the defendant is thereafter convicted. *Id.* (involving a challenge of the lawfulness of a search).

██ Here, Brown challenges the lawfulness of an arrest that was the subject of a motion to suppress in his criminal proceeding, in which he also challenged the lawfulness of his arrest. In that proceeding, an evidentiary hearing was held, at which extensive testimony was taken from the arresting parole officers and others. Brown had and used the opportunity to call witnesses on his behalf and cross-examine each of the prosecution witnesses, both as to the accuracy of their testimony as well as to their credibility. On the basis of these arguments and testimony, the court's findings specifically concluded that the arrest was lawful and the evidence obtained incident to the arrest admissible. There has been a final judgment on the merits: the Appellate Division unanimously affirmed the guilty plea and conviction and the New York State Court of Appeals denied Brown leave to appeal. The same issue, the lawfulness of Brown's arrest, was the subject of the suppression hearing and this claim. Therefore only one question remains as to the preclusive effect of the state action on the Brown's current action: whether Brown had a full and fair opportunity to litigate the claim.

*Ineffective Assistance of Counsel*

Brown alleges that he was denied effective assistance of counsel in the criminal proceeding and that he, therefore, did not have a "full and fair opportunity" to litigate his Fourth Amendment claim of unlawful arrest at the state court suppression hearing. Under the doctrine of *Stone v. Powell*, a habeas petitioner's Fourth Amendment claim is not reviewable in federal court where the petitioner, has been afforded and taken advantage of full and fair opportunity to litigate the claim in state court. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). *McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67 (2d Cir.1983); *Gates v. Henderson*, 568 F.2d 830 (2d Cir.1977),

*cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

The Second Circuit has held that a federal court will review a Fourth Amendment claim only where the petitioner was precluded from utilizing the available state process by reason of an unconscionable breakdown in that process. *Gates*, 568 F.2d 830 at 840 *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *Cruz v. Alexander*, 477 F.Supp. 516, 522–23 (S.D.N.Y.1979) *dism'd. without op.*, 622 F.2d 573 (2d Cir.1980); *Woods v. Kuhlmann*, 677 F.Supp. 1302, 1305 (S.D.N.Y.1988).

> Where petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or deliberately bypassed the procedure, however, courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown.

*Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir.1986).

Therefore Brown's allegation of ineffective assistance of counsel does not bar the application of collateral estoppel and res judicata principles to his Fourth Amendment claims.

*The Strickland Standard*

██ Moreover, even if ineffective assistance of counsel could properly be considered a denial of a full and fair opportunity to litigate a Fourth Amendment claim in the state courts, the instant action for unlawful arrest would nevertheless be barred by *res judicata* and *collateral estoppel*, because the state record belies Brown's claim of ineffective assistance.

The plaintiff has a stiff burden in proving an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). The Supreme Court has established a two-pronged test in which the plaintiff must first show that council's performance was deficient, that his representation fell below an objective standard of reasonable competence. *Id.* at 687–88, 104 S.Ct. at 2064. Courts should:

> indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;

that is, the defendant must overcome the presumption that, under the circumstances, that challenged action might be considered sound trial strategy. *See Michel v. Louisiana, supra,* 350 U.S. [91] at 101, 76 S.Ct. [158] at 164 [100 L.Ed.2d 83 (1955)].

*Id.,* at 689, 104 S.Ct. at 2065. In addition to rebutting the strong presumption of reasonableness in favor of defense counsel, Brown must also show that prejudice as a result of the action or omission complained of deprived him of a fair trial.

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . .

*Id.,* at 694, 104 S.Ct. at 2068.

The State record fails to reveal, and Brown has failed to demonstrate, either unreasonableness on the part of trial counsel or prejudice from the alleged error by counsel. Therefore his claim of ineffective assistance of counsel fails.

Brown alleges one error in his "traverse to the return" Cardero's decision not to call Brown as a witness at the suppression hearing. The decision as to whether or not to call any particular witness is a tactical decision, which the courts in this Circuit are loathe to second-guess, and as such, the decision cannot form the basis for a claim of ineffective assistance of counsel. *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 355, 98 L.Ed.2d 380; *United States v. Kanovsky,* 618 F.2d 229, 231 (2d Cir.1980); *United States v. Dossey,* 558 F.2d 1336, 1339 (8th Cir.1977). *Accord, United States v. Tolliver,* 569 F.2d 724, 730–31 (2d Cir.1978); *United States v. Yanishefsky,* 500 F.2d 1327, 1331–32 (2d Cir.1974). Further, Brown fails to allege, let alone show, how his testimony at the suppression hearing would have been in

any way helpful. *Nersesian,* 824 F.2d at 1321.

In fact, the record in this case demonstrates that counsel's advice to Brown not to testify at the suppression hearing was a matter of "sound trial strategy": Counsel advised Brown against testifying because of the risks involved in cross-examination.

Moreover, Brown fails to show how his testimony at the suppression hearing would have altered the outcome of the proceeding. The record demonstrates that the absence of Brown's testimony could not have been in any way prejudicial to plaintiff. The trial court allowed Brown to make all of his points and arguments before it decided the motion to suppress. However, since the hearing was not reopened, the prosecution was not given the opportunity to object to any of Brown's statements or to cross-examine Brown, the very reason Cardero had advised Brown against testifying during the hearing itself. The trial court stated that it would nevertheless consider Brown's arguments before deciding the motion and addressed each of Brown's arguments when it rendered its decision.

■ Thus, the record establishes that counsel's decision not to call the plaintiff was in no way prejudicial to plaintiff.[1]

*The Guilty Plea*

■ Brown's plea presented an additional and independent ground for barring his Fourth Amendment claims in this action. Under federal law, a defendant who enters a plea of guilty must also attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not "within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) (citing *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); *People v. Thomas,* 74

---

1. Nor can Brown allege that the trial court erred in denying his request to reopen the hearing since Brown did not indicate that he wished to testify at the suppression hearing (against counsel's advice) until after the closing arguments.

Under New York law, a trial court's decision denying a defendant's request to reopen the trial, after closing arguments, to permit the defendant to testify, is not an abuse of discretion as a matter of law. 71 N.Y.2d 916, 523 N.E.2d 818, 528 N.Y.S.2d 531 (1988).

A.D.2d 317, 428 N.Y.S.2d 20, 22–23 (2d Dep't 1980), *aff'd.*, 53 N.Y.2d 338, 424 N.E.2d 537, 441 N.Y.S.2d 650 (1981). As discussed above, Brown's allegations that Cardero did not act within the proper range of competence have no factual basis.

 Further, New York law, under the doctrine of collateral estoppel, holds that a guilty plea of conviction prevents Brown from relitigating his claims of unlawful arrest, illegal detention and violation of his right to fair trial. *Alexander v. City of Peekskill*, 80 A.D.2d 626, 626, 436 N.Y.S.2d 327, 328 (2d Dept.1981). Although the Second Circuit has not ruled on this issue, federal courts have held that:

> ... New York law would therefore preclude [plaintiff's] Section 1983 claim for unlawful arrest, and a federal court is bound under normal circumstances to give the prior state-court judgment the same preclusive effect. This result is consistent with an independent line of district court decisions in this circuit, never ruled on by the Court of Appeals, which hold that
>
>> an allegation of arrest without probable cause under 42 U.S.C. § 1983 is in the nature of the common law tort action of false arrest and false imprisonment, and that a valid judgment of conviction, a defense to the tort, requires dismissal of a § 1983 action on motion for summary judgment.

*Cameron v. Fogarty*, 705 F.2d 676, 678 n. 3 (2d Cir.1983) (*citing Pouncey v. Ryan*, 396 F.Supp. 126, 127 (D.Conn.1975) (Newman, J.)) (explicitly not addressing validity of this approach). *Camarano v. City of New York*, 646 F.Supp. 246, 249 (S.D.N.Y. 1986) (Lasker, J.). For these reasons, under both federal and New York law Brown's guilty plea precludes him from obtaining federal court review of his § 1983 claim for unlawful arrest.

Accordingly, the instant action must be dismissed on the grounds of *res judicata* and *collateral estoppel*. Brown has presented no material issues of fact which remain to be resolved.

*Conclusion:*

For the reasons set forth below, defendants' motion to dismiss is granted. Brown's motion for counsel and to supplement his complaint are denied.

It is so ordered.