Michael **WALLACE,** Plaintiff,

v.

W. **ROCHE,** D. **Mann,** J. **McCormack,** M. **Dunne,** V. **Buscemi** and D. **Dillon,** Defendants.

No. CV 92–5553.

United States District Court, E.D. New York.

March 29, 1996.

---

Michael Wallace, Port St. Lucie, FL, pro se.

Jerome B. Fleischman, Corporation Counsel of City of Long Beach, Long Beach, NY, for Defendants Roche, Mann, McCormack, Dunne and Buscemi.

Owen B. Walsh, Nassau County Attorney by Richard Lunger, Deputy County Attorney, Mineola, NY, for Defendant Dillon.

## MEMORANDUM DECISION and ORDER

SPATT, District Judge.

In prior proceedings in this Section 1983 action, the Court dismissed portions of the plaintiff's *pro se* complaint, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a cause of action upon which relief could be granted. This action is based on the plaintiff's arrest and state court conviction by guilty plea for possession of illegal substances.

In an Order dated July 6, 1993, the Court denied a motion by the defendants W. Roche, D. Mann, J. McCormack, M. Dunne and V. Buscemi (the "police defendants") to dismiss the first cause of action in the complaint, which alleges that the defendant was arrested without probable cause and was the victim of an illegal search and seizure. Subsequently, the Court granted the police defendants' motion for reconsideration, in which they argued that the fourth amendment issues raised by Wallace in this action had been fully litigated and resolved against him in the state court suppression hearing in the underlying criminal proceeding, after which he entered a plea of guilty. In an Order dated November 6, 1993, the Court adhered to its prior decision and declined to dismiss the plaintiff's Section 1983 fourth amendment claim based solely on the pleadings. The Court noted in that decision that the cases relied upon by the defendants were made in the context of summary judgment motions in which the courts considered evidence outside of the pleadings. In contrast, this Court was then ruling on the defendants' Rule 12(b)(6) motion, in which a court relies only on the complaint and its attachments and accepts all the allegations as true. Wallace's first cause of action was the only one asserted against the police defendants that survived the motion to dismiss.

The police defendants then brought the motion that is presently before the Court for an order granting summary judgment in their favor dismissing the complaint, based on the argument that the issues surrounding the arrest and search and seizure were previously determined in the state court criminal proceeding against Wallace. Transcripts of the state court proceedings and copies of the state court decisions are annexed to the defendants' motion papers.

■ As a preliminary matter, the Court notes that Wallace's objections to the propriety of this motion are without merit. Wallace contends that the motion is improperly brought because the defendants failed to schedule a pre-motion conference with the Court. However, no such conference is required by the Individual Rules where, as here, one of the parties is proceeding *pro se.* Wallace also complains that the defendants have made the same argument to the Court three times. With regard to this, the Court notes that the defendants (1) initially moved, pursuant to Rule 12(b)(6), to dismiss the complaint for failure to state a cause of action; (2) then, moved in timely fashion for reconsideration of the Court's denial of the Rule 12(b)(6) as to the first cause of action in the complaint, which motion was granted and upon reconsideration the Court adhered to its initial decision; and (3) moved for summary judgment based on supporting documentary evidence. The Court finds that the defendants' motion practice has been proper at the various stages of this litigation.

Finally, Wallace argues that the defendants should not be permitted to move for summary judgment prior to the completion of discovery and claims that "the plaintiff has not had a sufficient opportunity to engage in discovery of relevant facts, due to the dilatory tactics of the Nassau County Department of Law." Plaintiff's Memorandum of Law dated October 6, 1995. The Court has reviewed the record of the October 6, 1995 discovery conference before United States Magistrate Judge Viktor V. Pohorelsky. At that conference Judge Pohorelsky reviewed each of the plaintiff's discovery demands and the defendants' responses. Judge Pohorelsky found that except for one request, the defendants had responded sufficiently to each demand either by producing the document or asserting that it was privileged or not under their control. The plaintiff was advised by Judge Pohorelsky that discovery demands only compel a response, but that a motion may be made to overcome the assertion of privilege, and, that upon submission of affidavits challenging the truth of a response,

a hearing would be scheduled with regard to that challenge. The Court records contain no such challenges by the plaintiff to the defendants' assertions of privilege or to the veracity of the responses.

On October 6, 1995, Judge Pohorelsky directed the defendant Dillon to respond to one outstanding discovery demand. In response to this, on October 16, 1995, the defendant Dillon produced certain documents to the plaintiff and asserted attorney work-product privilege as to others. On October 6, 1995, Judge Pohorelsky also ruled that demands made after September 30, 1995 were beyond the discovery deadline. On December 15, 1996, Judge Pohorelsky denied the plaintiff's application to reopen document discovery, without prejudice to renewal of the application following the Court's disposition of summary judgment motions by the defendants. Accordingly, the Court rejects the plaintiff's contention that the defendants' summary judgment motion is premature due to outstanding discovery issues.

### BACKGROUND

The following facts regarding the incidents giving rise to this lawsuit are not in dispute. On February 9, 1990, a vehicle in which the plaintiff and four others were riding was stopped by the police in the City of Long Beach. The police stated that the car was being stopped because it proceeded through a stop sign without stopping. The police removed a cigarette box from a pouch in the back seat of the vehicle and discovered that it contained cocaine wrapped in foil. All five occupants of the vehicle were arrested and searched. A plastic bag containing cocaine and a foil packet containing marijuana were found in Wallace's possession during the search following his arrest.

On April 16, 1990 Wallace was indicted by a Grand Jury on one count of criminal possession of a controlled substance in the third degree, one count of criminal possession of a controlled substance in the fourth degree, one count of criminal possession of a controlled substance in the fifth degree and one count of unlawful possession of marijuana. Wallace moved to dismiss the indictment, and in an Order dated June 29, 1990, the Hon.

Marie G. Santagata dismissed the first count of the indictment based on a determination that the Assistant District Attorney failed to properly instruct the grand jurors as to that count.

Wallace then moved to suppress the physical evidence against him on the ground that he was stopped and arrested without probable cause and that the subsequent search was illegal and in violation of rights secured by the fourth and fourteenth amendments. Proceedings regarding this motion were held in the state court on October 30, 1990, January 4, 1991, February 20, 1991, March 27, 1991 and April 26, 1991. In an order dated May 10, 1991, which set forth findings of fact and conclusions of law, Judge Santagata denied Wallace's motion to suppress and ruled the vehicle stop was proper; that Officer Roche had probable cause to arrest Wallace; and that the search of Wallace was subsequent to the lawful arrest and incident to it.

On July 30, 1991, Wallace withdrew his prior plea and pled guilty to one count of attempted criminal possession of a controlled substance in the fourth degree, a Class D felony, in satisfaction of the entire indictment. An indeterminate sentence of two to four years was imposed by the court on August 22, 1991. Wallace appealed from the judgment of the state court, which was affirmed by the Appellate Division, Second Department in an opinion that stated

Appellate review of the issues raised by the defendant in his main brief and in his supplemental *pro se* brief, was effectively waived by him as part of his plea bargain. Accordingly, the judgment of conviction is affirmed (*see People v. Callahan*, 80 NY2d 273 [590 N.Y.S.2d 46, 604 N.E.2d 108]; *People v. Seaberg*, 74 NY2d 1 [543 N.Y.S.2d 968, 541 N.E.2d 1022]).

*People v. Wallace*, 191 A.D.2d 660, 595 N.Y.S.2d 320 (2d Dep't 1993). Leave to appeal to the Court of Appeals was denied. *People v. Wallace*, 81 N.Y.2d 1021, 600 N.Y.S.2d 210, 616 N.E.2d 867 (1993).

### DISCUSSION
#### The summary judgment standard

A court may grant summary judgment "only if the evidence, viewed in the light most

favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *See Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)); *see also National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City,* 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *See Western World,* 922 F.2d at 121. If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See United National,* 988 F.2d at 354–55; *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v.*

*Prudential Residential Services, Ltd, Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### Collateral estoppel

■ The police defendants contend that they are entitled to summary judgment based on the doctrine of collateral estoppel. Specifically, they assert that the issues raised by Wallace with regard to the alleged improper arrest and illegal search and seizure were fully litigated in the suppression hearing in the state court criminal proceeding and decided against him. This theory has been discussed by the Second Circuit as follows:

> In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court "made clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984); *see Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Anderson v. City of New York,* 611 F.Supp. 481, 486 (S.D.N.Y. 1985) ("There is no question that state court judgments can have collateral estoppel effect in subsequent section 1983 proceedings.... To determine the preclusive effect of a state court judgment, we look to the law of the state where the judgment was rendered.").

*Valley Disposal, Inc. v. Central Vermont Solid Waste Management Dist.,* 31 F.3d 89, 99 (2d Cir.1994). To invoke the doctrine of collateral estoppel, New York law requires (1) an identity of issues, which were necessarily decided in the prior action and are decisive to the present action and (2) a full and fair opportunity to contest the decision that is being asserted as controlling in the second action. *Brown v. The City of New York,* 80 A.D.2d 596, 436 N.Y.S.2d 37, 38 (2d Dep't 1981); *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 959, 246 N.E.2d 725, 729 (1969); *see also Temple of*

*the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178 (2d Cir.1991).

■ However, an adverse judgment in a prior criminal proceeding does not necessarily bar a subsequent Section 1983 claim. As the Second Circuit has observed,

> a guilty plea in no way bars a section 1983 claim under principles of collateral estoppel, waiver, or mootness, where the alleged constitutional violations were not necessarily answered by the admission of guilt. *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983).

*Powers v. Coe,* 728 F.2d 97, 102 (2d Cir.1984). In *Powers* the court held that a guilty plea did not moot a Section 1983 claim alleging deprivation of the right to a fair trial. *Id.* The court reasoned that the state proceedings had merely resulted in the acceptance of a guilty plea without adjudicating the merits of the constitutional claim. In *Haring v. Prosise,* upon which the *Powers* decision relies, a defendant who pleaded guilty in state court criminal proceedings to manufacturing a controlled substance challenged the legality of the search that produced the inculpatory evidence in a subsequent Section 1983 action. *Haring, supra,* 462 U.S. 306, 103 S.Ct. 2368. The Supreme Court ruled that the guilty plea did not bar Prosise's Section 1983 action to recover damages for an alleged fourth amendment violation because the issue of the legality of the search was never considered in the state proceedings, stating

> The only question raised by the criminal indictment and determined by Prosise's guilty plea in Arlington Circuit Court was whether Prosise unlawfully engaged in the manufacture of a controlled substance. This question is simply irrelevant to the legality of the search under the Fourth Amendment or to Prosise's right to compensation from state officials under § 1983.

*Id.* at 316, 103 S.Ct. at 2374.

Similarly, in *Owens v. Treder,* 873 F.2d 604 (2d Cir.1989), the Second Circuit found that the plaintiff's prior conviction by a jury in a state court proceeding did not preclude his Section 1983 action based on an alleged coerced confession. The *Owens* court held that collateral estoppel would not bar the plaintiff's claim because CPL § 710.70 permitted the jury in the prior criminal proceeding to redetermine the voluntariness issue following the state court's denial of the motion to suppress the confession. *Id.* at 608. In *Owens,* the court reasoned that the issue of a coerced confession was not essential to the jury's guilty verdict, which could have been made without addressing the issue or could have even decided it in the defendant's favor, but still convicted him on the basis of other substantial evidence. *Owens,* 873 F.2d at 609–12.

The Second Circuit also rejected an argument by the defendants in a Section 1983 action that "the issue of probable cause for [the plaintiff's] arrest was decided at his criminal trial because the trial court ruled that various pieces of evidence were admissible because they were seized as incident to a lawful arrest." *Cameron v. Fogarty,* 806 F.2d 380, 385 (2d Cir.1986). The *Cameron* court noted that "the trial court was never called upon to determine either the moment at which the arrest occurred or whether an arrest of Cameron ·... was made with or without probable cause." *Id.* Under such circumstances, litigation on the issue of probable cause in a subsequent Section 1983 action is not barred by principles of collateral estoppel, but in the absence of Congressional intent to the contrary, the Section "1983 doctrine [is] deemed ... to incorporate the common-law principle that, where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause." *Id.* at 388–89.

■ The above cases instruct the Court, in determining the applicability of a collateral bar, to look beyond the mere presence of a conviction by verdict or guilty plea and assess whether there is the identity of the issue which has necessarily been decided in the prior action. One court has commented that "[u]nder this rubric, the Second Circuit has narrowly limited the operation of issue preclusion in § 1983 actions." *East Coast Novelty Co., Inc. v. City of New York,* 781 F.Supp. 999, 1005 (S.D.N.Y.1992). Recognizing this, the Court nevertheless views the present case as falling within those narrow

limits. Indeed, a thorough review of the state court record that gave rise to the plaintiff's complaint leads the Court to the independent conclusion that the police defendants are entitled to judgment as a matter of law on the issue of the plaintiff's fourth amendment claims, even in the absence of collateral estoppel.

A number of decisions conclude that where the state court found probable cause to arrest and proper search and seizure following a full evidentiary hearing, subsequent Section 1983 claims challenging the legality of the arrest, search and seizure are barred as to those issues actually litigated in the suppression hearing. *See e.g., Roundtree v. City of New York,* 778 F.Supp. 614, 619 (E.D.N.Y. 1991); *Brown v. De Fillipis,* 717 F.Supp. 172, 178–79 (S.D.N.Y.1989); *Giannini v. City of New York,* 700 F.Supp. 202, 205 (S.D.N.Y. 1988); *see also, Guenther v. Holmgreen,* 738 F.2d 879 (7th Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985); *Ayers v. City of Richmond,* 895 F.2d 1267 (9th Cir.1990).

Here, Wallace bases his Section 1983 claim on allegations that the police defendants stopped the vehicle in which he was riding without probable cause and conducted an illegal search and seizure. The Court notes that Wallace sought to suppress the seized drugs and that his motion was denied after an evidentiary hearing on October 30, 1990, January 4, 1991 and February 20, 1991, at which Wallace was represented by counsel. At the outset of the suppression hearing, the defense attorney Ira London, Esq. framed the basis for the defendant's application to suppress evidence as follows:

THE COURT: Would you be so kind as to state the basis for this hearing?

MR. LONDON: It's a car stop. It is our claim that the car was improperly stopped for specious reasons; that it was a stop basically for a search without any probable cause, in addition to which the justification for the personal search of my client is based principally on the officer's statement that based on his meager training as a police officer, and given this meager training to perceive what is suspected as controlled substances, he believes that a tinfoil partially revealed in a cigarette pack in the back of a car in the pouch would leave him to conclude that it is contraband.

I don't think that there will be any case support for that, but that remains to be seen

THE COURT: For both the stop and the search?

MR. LONDON: Yes. But the seizure of the cigarette pack is the justification for the arrest of my client and the subsequent personal search, so there would be two areas I would ask the Court to look at carefully.

October 30, 1990 Tr. at 4–5. The issues presented to the state court in the suppression motion are identical to those raised as to the police defendants in the first cause of action in Wallace's Section 1983 complaint.

Following the suppression hearing, the state court ruled that the initial vehicle stop by the police was proper and that Officer Roche had reasonable cause to believe that the cigarette pack, which was in his plain view from outside the vehicle, contained drugs. The Supreme Court in *Allen v. McCurry* held that when conviction follows a denial of a defendant's pretrial suppression motion, the defendant is estopped from raising the same arguments regarding the search and seizure in a Section 1983 action. *Allen v. McCurry,* 449 U.S. 90, 102, 101 S.Ct. 411, 419, 66 L.Ed.2d 308 (1980). The doctrine has also been held to operate as a bar to Section 1983 claims, where, as here, the defendant pleads guilty. The following analysis by Judge Glasser is appropriate to the present case:

Although the plaintiff in *Cameron* [*Cameron v. Fogarty,* 806 F.2d 380 (2d Cir. 1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987)] had been convicted *at trial* of the offense for which he was arrested, entry of a guilty plea also operates as a defense to a Section 1983 action for arrest without probable cause. *Keyes v. City of Albany,* 594 F.Supp. 1147 (N.D.N.Y.1984) ("[A] § 1983 claim for false arrest or false imprisonment is barred by a plea of guilty . . . ."). That is, conviction at trial or by plea " 'conclusively establishes

the existence of probable cause, unless the conviction was obtained by fraud, perjury, or other corrupt means.'" *Cameron,* 806 F.2d at 387 (quoting Restatement (Second) of Torts § 667(1)); *Unger v. Cohen,* 718 F.Supp. 185, 187 (S.D.N.Y.1989) ("[C]onviction is viewed as establishing the existence of probable cause.... [But] an invalid judgment of conviction would not support the defense."). Finally, a plea of guilty to a charge lesser than that for which plaintiff was arrested also bars a Section 1983 action for arrest without probable cause. *Keyes,* 594 F.Supp. at 1152, 1155 (Section 1983 action for arrest without probable cause barred for plaintiff who had been arrested for assault but had pleaded guilty to disorderly conduct.)

. . . .

Under *Robinson* [*United States v. Robinson* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ], the arrest must be "lawful" in order to justify any search incident to that arrest; but such lawfulness is readily apparent in this case: It would be incongruous to maintain that the ultimate conviction of the plaintiff establishes probable cause for the arrest itself but that the validity of the arrest nonetheless remains open as to any searches incident to that arrest. Under *Cameron,* the guilty plea of a plaintiff demonstrates not merely the probable cause for the arrest but the *lawfulness* of it; hence, insofar as the constitutionality of a search incident to an arrest derives from the validity of the arrest itself, *Cameron* compels the conclusion that a guilty plea provides a defense to any Section 1983 claim brought for the search of an arrested person that is conducted as an incident to that arrest.

*Roundtree, supra,* 778 F.Supp. at 619–20. Under this reasoning, the conclusions of the suppression hearing and Wallace's guilty plea provide the police defendants with a defense to Wallace's Section 1983 claims.

The Court finds that the claims that Wallace presents in this action are identical to those he raised in the suppression hearing in the state court and were necessarily addressed in the state court's determinations that the vehicle stop was proper, that there was reasonable cause to arrest Wallace for the possession of cocaine and that the ensuing search was incident to the lawful arrest. Accordingly, the Court finds that the first element of collateral estoppel is established, namely, an identity of issues necessarily determined in the decision that the defendants assert is controlling. *See, e.g. Schwartz, supra* 24 N.Y.2d at 71, 298 N.Y.S.2d at 960, 246 N.E.2d at 730.

Based on the foregoing, Wallace may not challenge the validity of the arrest, search and seizure in this proceeding without presenting new evidence that would lead the Court to question whether he had a full and fair opportunity to litigate those issues in the state court. *See, e.g., Dukes v. State of New York,* 743 F.Supp. 1037, 1041–42 (S.D.N.Y. 1990) (citing *Brown v. De Fillipis,* 717 F.Supp. 172, 176–77 (S.D.N.Y.1989)). Wallace's argument in opposition to the applicability of collateral estoppel is, apparently, that he did not have a full and fair opportunity to litigate the fourth amendment issues he now raises in the state court criminal proceeding. However, having reviewed the state court record, the Court finds that Wallace has presented no new evidence with regard to his allegations. Moreover, it does not appear that Wallace has attempted to set aside the state court judgment under CPL § 440.10 on grounds that he raises here, for example, that adverse testimony was perjured or that his guilty plea was coerced. *See id.,* 743 F.Supp. at 1041–42. "The Second Circuit has held that a federal court will review a Fourth Amendment claim only where the petitioner was precluded from utilizing the available state process by reason of an unconscionable breakdown in that process." *Brown v. De Fillipis, supra* 717 F.Supp. at 179 (citing *Gates v. Henderson,* 568 F.2d 830 (2d Cir.1977), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *Cruz v. Alexander,* 477 F.Supp. 516 (S.D.N.Y.1979); *Woods v. Kuhlmann,* 677 F.Supp. 1302, 1305 (S.D.N.Y.1988)).

The Court will address each of Wallace's arguments relating to the allegation that his prior opportunity to litigate the fourth amendment issues was less than full and fair.

Wallace claims, in his papers in opposition to this motion, that the state court proceeding was flawed because "the Court found that the 'grand jury proceeding was defective,' but dismissed only one of the four counts against the plaintiff." The Court notes that Judge Santagata, in dismissing the first count of the indictment, stated the following:

This Court has inspected the Grand Jury minutes *in camera* and finds that it is not necessary to release the minutes or any portion thereof to the defendant's attorney to assist the Court in making its determination. (CPL § 210.30[3]). In lieu thereof, this Court has inspected the Grand Jury minutes and upon such inspection renders the following decision, opinion and order.

As to Count One, this Court finds that the Assistant District Attorney failed to give proper legal advice and adequate instruction to the members of the Grand Jury. Accordingly, the Grand Jury proceeding was defective and Count One is hereby ordered dismissed.

Count One of the indictment accuses the defendant of the crime of Criminal Possession of a Controlled Substance in the Third Degree, in violation of Section 220.16 of the Penal Law. The gravamen of the offense is that the defendant possessed cocaine with the intent to sell it. In his instructions to the Grant Jury, the Assistant District Attorney failed to provide definitions of intentional conduct (PL § 15.05[1]) and sale (PL § 220.00[1]). The Assistant District Attorney also failed to instruct the Grant Jury on the law of corroboration of accomplice testimony. (CPL §§ 60.22[1]; 190.65[1]).

In this case, failure to charge corroboration was a fatal defect, since the necessary element of intent to sell was established only through the testimony of the other occupants of the automobile, each of whom could reasonably be regarded as an accomplice of the defendant. The amount of cocaine involved was not so substantial as to constitute *per se* evidence of intent to sell; nor was there any evidence that the cocaine was packaged in a manner indicative of sale. Accordingly the testimony of the other occupants of the car constituted the only evidence of the defendant's intent. Under such circumstances, instructions as to the necessity of corroboration of accomplice testimony was required. (CPL § 190.65[1]).

This Court finds that the evidence before the Grant Jury was legally sufficient to support the crimes charged in Counts Two, Three and Four. The grand Jury proceeding was not defective; proper legal advice and adequate instructions as to these three counts were given by the Assistant District Attorney. (CPL §§ 210.35[5] and 190.25[6]).

Memorandum Decision of Judge Santagata, dated June 29, 1990. By quoting this decision out of context in his motion papers, Wallace insinuates that Judge Santagata declared the entire Grand Jury proceeding defective, yet permitted the charges against him to be prosecuted. Clearly, Judge Santagata's finding of defect in the Grand Jury proceeding was limited to Count One, which she appropriately dismissed. Her decision expressly found that "the proceeding was not defective" as to Counts Two, Three and Four. This portion of Wallace's argument has no merit and presents no evidence of deprivation of a full and fair opportunity to litigate his fourth amendment claims.

■ Wallace also claims that the state court judge denied his attempt to call two of his co-defendants as witnesses in the suppression hearing, and further would not permit him to obtain their Grand Jury testimony. The following exchange transpired between Wallace's attorney and Judge Santagata regarding testimony by the co-defendants:

MR. LONDON: ....

My first application is to direct them to testify in view of the fact that they waived their Fifth Amendment privilege at the Grand Jury, and it would be my position that there is nothing further to protect, since they've already given testimony about this case freely and voluntarily under a waiver of immunity in the Grand Jury. That would apply to Clemmons as well.

THE COURT: I'm addressing only these two defendants [Lisa Sanito and Edward Freudiger]. That application is denied.

MR. LONDON: Then I would move to use their Grand Jury testimony, if it's appropriate.

Your Honor has read it pursuant to our informal agreement, and I would move to use that grand Jury testimony as hearsay evidence on the issues, the factual issues, in this case.

THE COURT: All right. And that is also denied. When I have read the testimony, there is nothing in it material to the issue that you have promulgated.

Also, I'm reading the cases. It would appear that the use of Grand Jury testimony is not testimony as has been conceived by the statute.

March 27, 1991 Tr. at 5–6. At the close of the suppression hearing Wallace's counsel stated:

... there are no further witnesses the defense is in a position to call; given the fact that the three important witnesses in this case, who were occupants of the car, in addition to my client, are unwilling or unable to testify, as the case may be.

Given all of that, we have no further witnesses. Is that correct?

THE DEFENDANT: No.

MR. LONDON: Do we have any other witnesses?

THE DEFENDANT: No.

April, 1991 Tr. at 2–3. The state court reviewed the grand jury testimony *in camera* and found that it contained nothing material to the issue that the defendant wished to raise. In the Court's view, the fact that the state court denied Wallace's application to call co-defendants or obtain their grand jury testimony does not mean that he was deprived of a full and fair opportunity to litigate the issue of the legality of the arrest, search and seizure in the state court. *See* N.Y.Crim.P.Law § 190.25(4)(a) (grand jury proceedings are secret and may not be obtained without order of the court); *Lungen v. Kane,* — A.D.2d ——, 630 N.Y.S.2d 96, 98 (3d Dep't 1995), *leave to appeal granted,* 86 N.Y.2d 712, 635 N.Y.S.2d 949, 659 N.E.2d 772 (1995) (only a showing of "compelling and particularized need" will overcome the secrecy of grand jury proceedings).

Wallace further asserts that he did not have a full and fair opportunity to litigate the issues surrounding the challenged search and seizure because his guilty plea was coerced and was not knowing and voluntary in that he did not know that he was waiving appeal rights. Wallace does not state any specific fact in support the allegation that he was coerced. As Wallace correctly points out, the law requires that the record of a plea proceeding must affirmatively demonstrate that the plea was made voluntarily and understandingly. *See generally Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

On July 30, 1991, Wallace appeared before the court, represented by Mitchell Dranow, Esq., to change his plea, and on that date Wallace pled guilty to possession of a controlled substance in the fourth degree, a Class D felony, in satisfaction of the entire indictment. Under oath Wallace stated that he was fifty-one years old, (2) able to read and write English, (3) finished high school and a year of college, and (4) worked as a truck sales engineer prior to his arrest. The plea allocution continued as follows:

THE COURT: Do you feel in good physical and mental health as you stand here today?

THE DEFENDANT: Today I do, yes.

THE COURT: Have you taken any alcohol or drugs in the last 24 hours?

THE DEFENDANT: No.

THE COURT: Have you ever been treated or confined to a hospital for any mental illness or disorder?

THE DEFENDANT: No.

THE COURT: Do you feel that you have had enough time to speak with your lawyer before deciding to plead guilty?

THE DEFENDANT: Yes, I have.

THE COURT: Are you satisfied with your lawyer?

THE DEFENDANT: Yes, I am.

THE COURT: Do you understand that you have the right to a trial by jury with the help of a lawyer?

THE DEFENDANT: Yes, I do.

THE COURT: Do you also understand that you do not have to take the witness stand and testify if you go to trial?

THE DEFENDANT: Yes, I do.

THE COURT: That you have the right to hear and question the witnesses who would testify against you?

THE DEFENDANT: Yes, I do.

THE COURT: That you also have the right to bring in witnesses to testify for you?

THE DEFENDANT: Yes.

THE COURT: Do you understand that by pleading guilty you give up each of these rights?

THE DEFENDANT: I understand that.

THE COURT: Now, has anyone made any threats or in any way tried to force you to plead guilty?

THE DEFENDANT: No, they have not.

THE COURT: Are you presently on probation or parole for another charge?

THE DEFENDANT: Yes, I am.

THE COURT: Are you on probation or parole.

THE DEFENDANT: I'm on parole.

THE COURT: Do you have any unused time, time that you owe the Parole Board?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that by pleading guilty to this charge that that would constitute a violation of your parole?

THE DEFENDANT: Yes, I do. There is something that is being misunderstood. I have already went to the parole Board and had a hearing, a final hearing. I was given fifteen months in that final hearing; and which I have already served.

THE COURT: The time that you had been waiting for trial on this—

THE DEFENDANT: Waiting for trial, I have already served that.

THE COURT: So you served the full fifteen months?

THE DEFENDANT: Yes, your honor.

THE COURT: All right.

THE DEFENDANT: But now there is still fourteen months pending or something. I can't check on the exact amount of time.

THE COURT: All right. But you do understand that?

THE DEFENDANT: Yes.

THE COURT: You also understand that you are going to waive your right to appeal?

THE DEFENDANT: Yes.

THE COURT: Have you discussed that with your attorney?

THE DEFENDANT: Yes, I have.

THE COURT: Do you understand that that means that everything that transpires in this court is final and you may not have it reviewed by another court?

THE DEFENDANT: I understand that.

THE COURT: Now, you are charged by Indictment 74456 with various counts, as outlined by the Clerk. And the District Attorney has offered to permit you to plead guilty to attempted criminal possession of a controlled substance in the fourth degree, a Class D felony, under count two of Indictment 74456, and in satisfaction of it. And your attorney has indicated that you would plead guilty to that charge. Is that correct?

THE DEFENDANT: That is correct, your Honor.

THE COURT: Now, I have said that I would sentence you to no more than two to four years. And I understand, also that you are a prior felony offender. Is that correct?

THE DEFENDANT: That's correct, your Honor.

THE COURT: Now, other than the promise that I have made to you regarding your sentence, has anyone else made any promises to you?

THE DEFENDANT: No, your Honor.

THE COURT: Are there any agreements between the defendant and the District Attorney that have not been placed on the record?

MR. WALLACE: No, your Honor.

THE COURT: I will not accept your plea unless you are, in fact, guilty. So will you tell me in your own words what happened as it relates to this charge. Your attorney will show you the indictment to refresh your recollection as to the date, if it needs refreshing.

THE DEFENDANT: All right. On February 9th, 1990, I was in possession of a package of a controlled substance.

THE COURT: What controlled substance?

THE DEFENDANT: To wit, cocaine.

THE COURT: Did you know it was cocaine?

THE DEFENDANT: Yes, I did.

THE COURT: And what was the weight of that, the total weight?

THE DEFENDANT: It was alleged to be seven grams.

THE COURT: Which is more than one eighth of an ounce.

MR. WALLACE: That's correct, your Honor. The S.I.B. report indicates 0.205 ounces.

THE COURT: The law provides for an aggregate weight of the substance; the aggregate weight of that which containes [sic] a narcotic drug; not that it has to be pure weight. So the aggregate weight is one eighth of an ounce or more. Do you acknowledge that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: And where were you in possession of it? The community.

THE DEFENDANT: In the City of Long Beach.

THE COURT: And that's in Nassau County?

THE DEFENDANT: Yes, your Honor, it is.

THE COURT: All right. The Court is satisfied that the defendant understands the nature of the charge, the nature of the plea, the possible consequences of his plea, and that the defendant has discussed his legal rights with his attorney, that the defendant understands that he is waiving his constitutional rights, and that the plea is voluntary and of his own free will. The Court is satisfied that the defendant has acknowledged his guilt and is willing to assume responsibility for it. By pleading guilty, he has insured prompt and certain punishment to himself without dealy [sic]. The Court believes that it is in the interests of justice to accept the plea form this defendant. The Clerk is now directed to take the plea.

THE CLERK: Michael Wallace, do you now wish to withdraw your previously entered plea of not guilty to Indictment number 74456, and plead guilty to attempted criminal possession of a controlled substance in the fourth degree, a Class D Felony?

THE DEFENDANT: Yes, I do.

THE CLERK: How do you plead?

THE DEFENDANT: I plead guilty.

THE CLERK: I have a plea of guilty, your Honor.

THE COURT: All right.

July 30, 1991 Tr. at 2–9.

 Federal law governs the appropriate standards for determining whether a plea of guilty is intelligent and voluntary for purposes of the United States Constitution. *Marshall v. Lonberger*, 459 U.S. 422, 431, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983). The Court first notes "that it is not inherently unjust to require a defendant to waive certain rights as a condition of a plea." *United States v. Braimah*, 3 F.3d 609 (2d Cir.1993). The Second Circuit has upheld plea agreement conditions requiring the defendant to waive his right to appeal. *See, e.g., United States v. Salcido–Contreras*, 990 F.2d 51, 51–52 (2d Cir.), *cert. denied*, 509 U.S. 931, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993). Discussing the standard by which federal courts are to assess the waiver of federal constitutional rights, the Second Circuit stated that

[t]he standard set by *Boykin v. Alabama* with respect to the voluntariness of a plea of guilty for federal constitutional purposes

requires not only that the plea court inquire into the defendant's understanding of the charges, the proceedings, and the rights to be foregone, but also that it do so showing "the utmost solicitude of which [the court is] capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." 395 U.S. at 243–44, 89 S.Ct. at 1712. The court should not accept such a plea "without an affirmative showing that it was intelligent and voluntary." *Id.* at 242, 89 S.Ct. at 1711.

*Matusiak v. Kelly,* 786 F.2d 536, 544 (2d Cir.), *cert. dismissed,* 479 U.S. 805, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). Representation by counsel is also a relevant factor in determining the voluntariness of a plea. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

In the present case the plea is clear, unequivocal and complete. This Court will not go behind such a definite, certain and comprehensive demonstration of a defendant's understanding of the consequences of his plea. In the Court's view, the plea minutes affirmatively demonstrate the voluntariness of Wallace's plea. The Court perceives nothing in the state court proceedings surrounding Wallace's plea that detracted from a full and fair opportunity to litigate the legality of the arrest, search and seizure. Furthermore, some of the very matters Wallace now claims he unknowingly waived by virtue of his guilty plea are matters that survive waivers under New York case law. *See e.g. People v. Seaberg,* 74 N.Y.2d 1, 543 N.Y.S.2d 968, 971, 541 N.E.2d 1022, 1025 (1989) (defendants retain the right to bring speedy trial claims and challenges to the legality of the sentence or voluntariness of the plea).

■ In sum, the Court finds that Wallace's assertion that he was deprived of a full and fair opportunity to litigate the issue of the legality of the search and seizure is without merit. The state court provided Wallace with the opportunity to challenge the indictment in a motion to dismiss and to raise his fourth amendment claims in a suppression motion. The state court conducted an extensive suppression hearing in which Wallace

had the opportunity to cross examine witnesses, introduce evidence, call witnesses on his behalf and testify on his behalf. In addition, there is no indication that an unconscionable breakdown prevented Wallace from utilizing the state court process. *See Gates, supra,* 568 F.2d at 840.

In the Court's view, Wallace is collaterally estopped from basing a Section 1983 claim on an illegal arrest, search and seizure because the record demonstrates that (1) the state court directly decided an issue central to the Section 1983 claim, namely that the arrest, search and seizure were proper and legal, and (2) Wallace had a full and fair opportunity to litigate the issue in the prior state court criminal proceeding.

■ Furthermore, as stated above, based on an independent review of the state court record, the Court finds that the police defendants did not violate Wallace's fourth amendment rights by their conduct because (1) the vehicle was properly stopped based on a traffic violation; (2) under the circumstances presented it was reasonable for the police officers to suspect that the cigarette pack in their plain view contained illegal substances and they properly seized it; (3) probable cause supported Wallace's arrest for possession of the cocaine in the cigarette pack; and (4) the police officer's search of Wallace, during which they discovered marijuana, was subsequent to the lawful arrest and incident to it. The record reveals no constitutional violation.

*Extrajudicial conspiracy*

Wallace sets forth an additional theory in opposition to the defendants' motion, namely, that his allegation of an "extrajudicial conspiracy" should defeat the defendants' motion for summary judgment. Wallace states that the defendant Roche conspired with the prosecutor in the state criminal proceeding to introduce perjured testimony to the grand jury. To support his theory, Wallace cites Second Circuit authority for the proposition that grand jury witnesses may not assert immunity for Section 1983 liability with regard to extra-judicial conduct, such as conspiring to present false testimony. *See Dory*

*v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) ("witnesses enjoy immunity only for their actions in testifying"). However, the defendants do not argue that immunity shields them from Wallace's claims. Their theory, as discussed above, is that they are entitled to summary judgment based on principles of collateral estoppel.

 Furthermore, "conclusory allegations of conspiracy are insufficient to survive ... a motion for summary judgment in the defendants' favor." *San Filippo v. U.S. Trust Co. of New York, Inc.,* 737 F.2d 246, 256 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). The only evidence presented by Wallace to support his allegation of conspiracy are hypertechnical discrepancies between the facts stated in the district attorney's worksheet, the police crime report, and the testimony of Officer Roche at the suppression hearing. Wallace claims that Roche's testimony is inconsistent with facts set forth in the district attorney's worksheet and the police report of the arrest, and apparently contends that such inconsistencies evince a conspiracy to present perjured testimony. The Court will set forth the reasoning that supports its conclusion that Wallace's allegations of conspiracy are without merit.

Specifically, Wallace first notes that the district attorney's worksheet states, "POs tailed # 5 [Wallace] from house into # 1's car [Cornell Clemmons] w/ other [defendants] to Rockaway and back when [defendants] returned to LB, POs stopped car for VTLs." Wallace alleges that Roche testified at the suppression hearing that he first observed the vehicle in Long Beach and that he was not surveilling the vehicle. However, the Court notes that Roche testified as follows on direction examination:

Q Let me direct your attention if I can to about 6:00 to 6:1 p.m. and ask you if you had an opportunity at that time to observe a 1987 Pontiac?

A Yes, I did.

Q Where did you first observe that vehicle at that time?

A I observed that vehicle eastbound on West Beach Street approaching New York Avenue, and at that time the vehicle made a right turn onto southbound New York Avenue and failed to signal at that time.

October 30, 1992 Tr. at 9–10. The Court further notes that on cross examination by Wallace's counsel, Roche testified as follows:

Q Was your attention attracted to that vehicle?

A Yes, it was.

Q I am speaking about you personally, not your brother officers.

A Yes, it was.

Q What was it about that vehicle that attracted your attention?

A I had seen that vehicle earlier at a known drug location that I was observing earlier in the day.

. . . .

Q The information that you just told the court, that you had seen the vehicle earlier, is that an observation that you had made yourself?

A That I had seen the vehicle earlier?

Q Yes.

A Yes, that's correct.

Q And the information that where you had seen the vehicle earlier was a known drug location, is that information that someone else gave you?

A That is information that came into the police department. That is why we were observing that location.

October 30, 1990 Tr. at 26–27, 30. In no way does Roche's testimony contradict the district attorney's notation that police surveillance occurred prior to the traffic violation stop.

Wallace also contends that Roche's testimony at the suppression hearing contradicts the district attorney's worksheet regarding the seating arrangement in the vehicle at the time it was stopped by the police. Specifically, the district attorney's worksheet states, "Sanito was driver Freudiger-rear passenger side Ward-rear behind driver Clemmons-rear middle Wallace-passenger side." Wallace alleges that Roche's suppression hearing testi-

mony contradicts this information in that Roche testified, "He [Freudiger] was seated in the center in the back seat." October 30, 1992 Tr. at 14. Roche testified on cross examination that he did speak with the district attorney regarding the incident prior to testifying before the grand jury. October 30, 1992 Tr. at 36–40. He also testified at the suppression hearing that he was sure that he did not tell the district attorney that Freudiger was seated in the rear passenger side. October 30, 1992 Tr. at 40. The Court notes that at the suppression hearing, the prosecutor objected to Roche being questioned with regard to the district attorney's worksheet notations because the worksheet itself states "Spoke with PO McCormack–3/30/90" directly above the notations regarding the defendants' positioning in the vehicle. Indeed, the assistant district attorney and defense attorney London agreed that London would question the former assistant district attorney who prepared the worksheet. London reported to the Court:

> I spoke to the ADA who wrote the notes, and he said it was his custom and practice to put the name of the officer he interviewed at the top, and then present what the officer told him.
>
> Mr. Barkett [the prosecutor] has agreed to stipulate to that. He has also interviewed the same ADA; and has confirmed that what I just represented to the Court, is so.
>
> THE COURT: The record will so indicate.

April 26, 1991 Tr. at 2.

In the Court's view, nothing with regard to Roche's testimony or the assistant district attorney's worksheet constitutes evidence of a conspiracy to offer false testimony. Furthermore, Judge Santagata ruled that "This Court finds that it is immaterial as to which person was sitting in the center" and also ruled that Roche was a credible witness. Memorandum Decision of the Hon. Marie G. Santagata, dated May 10, 1991.

Wallace's final point with regard to Roche's testimony at the suppression hearing is that his testimony contradicted the police arrest report. The police report, dated February 2, 1990, states:

WHILE P.O. MANN WAS SPEAKING TO THE OPERATOR, P.O. ROCHE WAS STANDING AT THE LEFT SIDE OF THE VEHICLE WITH A CLEAR VIEW INTO THE CAR THRU THE OPEN WINDOW, WHEN AN OPEN MARLBORO CIGARETTE BOX WAS SEEN IN THE TOP, REAR POUCH OF THE DRIVER'S SEAT. IN PLAIN VIEW, P.O. ROCHE COULD SEE THAT THE BOX CONTAINED A TIN FOIL PACKET, TOOTHPICKS, AND A FOLDED PIECE OF PAPER. BASED ON TRAINING AND EXPERIENCE AS A POLICE OFFICER, AND KNOWING THAT CONTRABAND WAS COMMONLY WRAPPED IN TIN FOIL AND CONCEALED IN CIGARETTE PACKAGES, HE INSPECTED THE TIN FOIL PACKET AND DISCOVERED THAT IT CONTAINED 3 GRAMS OF CRYSTALLINE COCAINE POWDER.

According to Wallace, Roche's subsequent testimony at the suppression hearing is not consistent with the crime report because he testified that he viewed the Marlboro pack when the seat of the car was pushed forward to permit one of the passengers in the rear seat to exit. In the Court's view it is immaterial that the crime report does not include every detail to which Roche testified at the suppression hearing. Roche's plain view of the cigarette pack is not effected by the distinction between his (1) viewing the pack from outside the car with the seat in its regular position or (2) viewing the pack from outside the car when the rear seat passenger pushed the seat forward to exit the vehicle. In either circumstance the cigarette pack was in the officer's plain view, as the state court concluded. *See* May 10, 1991 Decision at 5, 6. Wallace also argues that it is significant that the police report states that Roche could see that the cigarette pack contained a tin foil packet, toothpicks and a folded piece of paper, when Roche's testified that he only discovered narcotics when he opened up the cigarette pack. Roche testified that

> A ... I saw toothpicks in there, and as I am focusing and looking at it I see there is a tinfoil package also contained

in there with the cigarettes and tooth-picks.

Q What drew your attention to the tinfoil packet?

A Well, like I said, when I saw the tooth-picks that drew my attention to it. As I looked at the tinfoil I could see that it was like a cylinder shape and bent over at the top and pinched like it was containing something.

. . . .

The tinfoil was different from the kind normally in a cigarette pack because in a cigarette pack it is usually dull and has a white paper backing on it. This was shiny, like regular aluminum foil. The way it was folded over at the top and pinched together, I be-lieved that it was being used to con-tain a narcotic or controlled substance or marijuana.

. . . .

Q What was that belief based on?

A Well, based upon the training I had at the schools I mentioned and on arrests I've been involved with that I have known that this is a common way for this controlled substance, marijuana, to be packaged, and also toothpicks as being a utensil or device that could be used for smoking or preparing certain items that can be used to smoke.

. . . .

Q What did you say or do at that point?

A At that point based on what I had seen I said to the occupants in the vehicle, "Whose cigarette pack is this?"

Q Was there any response form any of the occupants in the car?

A No, there wasn't.

Q What did you do then?

A At that point I reached into the car and I took the cigarette pack out and I pulled the tinfoil out of it and I opened it up. And again based on my training and experience I recognized the white powdery substance in there to be co-caine.

I immediately called my sergeant over and showed him what I had and where I found it and at that point he made the decision that everybody in the car would be arrested for the cocaine.

October 30, 1990 Tr. at 15–17.

 Wallace cites *New York v. Class,* 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) for the proposition that a search is unconstitutional where an officer reached into a car. In *Class supra,* the Supreme Court held that where papers on a dashboard blocked the VIN number of a car stopped for a traffic violation, and the officer "reached directly for the unprotected space where the VIN was located to move the offending pa-pers" and saw the handle of a gun from the interior of the car, "this search was suffi-ciently unintrusive to constitutionally permis-sible." *Id.* at 119, 106 S.Ct. at 968. The Court does not understand how the *Class* holding relates to the present case or in what regard Wallace views it as supporting his argument. The "plain view" doctrine "posits that a warrantless seizure by police of a 'suspicious object' that comes into plain view in the course of an otherwise legitimate search will be considered reasonable under the fourth amendment." *United States v. Moreno,* 897 F.2d 26, 32 (2d Cir.1990) (citing *Texas v. Brown,* 460 U.S. 730, 737–39, 103 S.Ct. 1535, 1540–42, 75 L.Ed.2d 502 (1983) (plurality opinion); *Arizona v. Hicks,* 480 U.S. 321, 321–23, 107 S.Ct. 1149, 1151, 94 L.Ed.2d 347 (1987); *Coolidge v. New Hamp-shire,* 403 U.S. 443, 465–71, 91 S.Ct. 2022, 2037–41, 29 L.Ed.2d 564 (1971) (plurality opinion)). The seizure must be supported by probable cause for the officer to believe that the suspicious object is evidence of a crime, which involves a finding that there is a prac-tical, non-technical probability that incrimina-ting evidence is involved when viewed from officer's perspective, including his experience and judgment. *Moreno, supra,* at 32. In the present case, Roche testified extensively regarding his training and experience and the reasons supporting his suspicion that the cigarette package contained illegal sub-stances. Judge Santagata found that the circumstances justifying a plain view seizure of the cigarette pack were present. May 10, 1991 Decision at 6.

The Court agrees with Judge Santagata's conclusion that Roche's testimony was "not marred by any material inconsistencies," *See* May 10, 1991 Decision at 2, and in any event, this Court would give full faith and credit to that determination. In addition, the Court perceives no evidence in the portions of the record cited by Wallace that the defendants conspired to offer false testimony.

Accordingly, the Court finds that Wallace's allegations of conspiracy to offer false testimony are not sufficient to defeat this motion for summary judgment.

### CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the motion by the defendants W. Roche, D. Mann, J. McCormack, M. Dunne and V. Buscemi, pursuant to Rule 56 for summary judgment is granted and the complaint against them is dismissed in its entirety as a matter of law; and it is further

ORDERED, that the caption of the case is amended to read as follows:

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

MICHAEL WALLACE,

 Plaintiff,

—against—

D. DILLON,

 Defendant.

CV 92–5553

**SO ORDERED.**